1 | JONATHAN M. KAUFMAN, ESQ. (California State Bar No. 104576)
The Law Offices Of Jonathan M. Kaufman
2 | 220 Montgomery Street, Suite 976
San Francisco, CA 94104
3 | Telephone: (415) 956-4765
Facsimile: (415) 956-1664
4 | E-Mail:    jonathan-kaufman@sbcglobal.net

5 | Attorney for Plaintiffs

6 | UNITED STATES DISTRICT COURT



7 | FOR THE NORTHERN DISTRICT OF CALIFORNIA

8 | SARABJIT KAUR THIND and
9 | JASWANT SINGH THIND,                                    Case No.

COMPLAINT FOR DECLARATORY
10 |        Plaintiffs,                                     JUDGMENT AND INJUNCTION

11 |    vs.

12 | EMILIO T. GONZALEZ,
Director, United States Citizenship
13 | and Immigration Services,

14 |        Defendant

15 | _____/

16 |

17 |        Plaintiffs allege:

18 |        1. This action is brought pursuant to the provisions of 28 U.S.C. § 1331 and 5 U.S.C.

§§ 701 - 706.

        2. Defendant is the Director of the United States Citizenship and Immigration Services,

(USCIS), an agency in the Department of Homeland Security, charged with the duty to administer

and enforce the Immigration and Nationality Act, including the adjudication of an asylee relative

petition filed pursuant to 8 C.F.R. § 208.21(c) to accord derivative asylum under 8 U.S.C. §

1158(b)(3)(A).

        3. Plaintiffs are husband and wife and citizens of India.

        4. On August 10, 2000 plaintiff Sarabjit Kaur Thind applied for asylum with the Immigration

and Naturalization Service. See Exhibit A.

28 |                                           1

5. On November 28, 2000 plaintiff was determined to be eligible for asylum and her asylum application was approved. See Exhibit B.

6. On December 2, 2002 plaintiff filed an asylee relative petition, Form I-730, with the USCIS to accord her husband, plaintiff Jaswant Singh Thind, derivative asylum. On March 2, 2004 plaintiffs' petition was denied. See Exhibit C.

5. On July 13, 2006 the USCIS reopened the petition for approval pending a fingerprint check of Jaswant Singh Thind. See Exhibit D.

7. Jaswant Singh Thind was fingerprinted by the USCIS on July 26, 2006. See Exhibit E.

8. On October 5, 2007 the USCIS issued notice that it intended to deny plaintiffs' petition. See Exhibit F.

9. On October 15, 2007 plaintiffs responded to the notice of intent to deny. See Exhibit G.

10. On February 27, 2008 the USCIS denied plaintiffs' petition. The USCIS found that plaintiff Jaswant Singh Thind was ineligible for derivative asylum because plaintiffs were members of an organization that rendered plaintiff Jaswant Singh Thind inadmissible under 8 U.S.C. § 1182(a)(3)(B)(i)(VI). There is no administrative appeal from the USCIS's decision. See Exhibit H.

11. The finding that plaintiff Jaswant Singh Thind is inadmissible under 8 U.S.C. § 1182(a)(3)(B)(i)(VI) is arbitrary, capricious, and contrary to law.

12. Plaintiff Sarabjit Kaur Thind is an asylee entitled to confer derivative asylum to Jaswant Singh Thind pursuant to 8 U.S.C. § 1158(b)(3)(A).

WHEREFORE, plaintiffs pray judgment.

1. Declaring that plaintiff Sarabjit Kaur Thind is an asylee entitled to confer derivative asylum to Jaswant Singh Thind pursuant to 8 U.S.C. § 1158(b)(3)(A).

2. Declaring that the USCIS's finding that plaintiff Jaswant Singh Thind is inadmissible under 8 U.S.C. § 1182(a)(3)(B)(i)(VI) is arbitrary, capricious, and contrary to law.

3. Enjoining the USCIS to adjudicate, forthwith, plaintiff Sarabjit Kaur Thind's asylee relative petition, finding that plaintiff Jaswant Singh Thind is not inadmissible under 8 U.S.C. §

2

1  1182(a)(3)(B)(i)(VI).

2       4. Awarding plaintiffs their costs and reasonable attorneys fee incurred in this action;

3       5. Granting such other and further relief as may be appropriate.

4  Dated: 3｜7｜08

5

6                                          JONATHAN M. KAUFMAN
                                           Attorney For Plaintiffs
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                              3

# EXHIBIT A

U.S. Department of Justice
Immigration and Naturalization Service

**Application for Asylum and for Withholding of Removal**

OMB No. 1115-0086

Start Here - Please Type or Print.    USE BLACK INK. SEE THE SEPARATE
INSTRUCTION PAMPHLET FOR INFORMATION ABOUT ELIGIBILITY AND
HOW TO COMPLETE AND FILE THIS APPLICATION. *NRC₁S 816-00u e*

**PART A - INFORMATION ABOUT YOU.**

| | |
|---|---|
| 1. Alien Registration Number(s), if any (A#'s) N/A 78646333 | 2. Social Security Number N/A |
| 3. Complete Last Name THIND | 4. First Name SARABJIT | 5. Middle Name KAUR |

6. What Other Names Have You Used?  *(Include maiden name and aliases.)*
AMRAJ KAUR

7. Residence in the U.S.
C/O

Telephone Number
**(510) 429 7573**

Street Number and Name
**31221 KIMBERLY CT.**

Apt. No.

| City UNION CITY | State CA | ZIP Code 94587 |

8. Mailing Address in the U.S. if Other than Above
C/O

Telephone Number

Street Number and Name
**31221 KIMBERELY CT.**

Apt. No.

| City UNION CITY | State CA | ZIP Code 94587 |

9. Sex:  ☐ Male  ☒ Female

10. Marital Status:  ☒ Single  ☒ Married  ☐ Divorced  ☐ Widowed

11. Date of Birth *(Mo/Day/Yr)*
**01/15/1973**

12. City and Country of Birth
**AMRITSAR, INDIA**

(b)(2)
(b)(7)(c)

13. Present Nationality *(Citizenship)*
**INDIAN**

14. Nationality at Birth
**INDIAN**

15. Race, Ethnic or Tribal Group
**ASIAN**

16. Religion
**SIKH**

17. Check each box that applies.

☒ I am not now in removal, deportation or exclusion proceedings.
☐ I was previously in removal, deportation or exclusion proceedings.
☐ I am now in removal, deportation or exclusion proceedings.
☒ I have never been in removal, deportation or exclusion proceedings.

18. Complete 18a through 18g.

a. When did you last leave your country?  *(Mo/Day/Yr)* **09/05/1999**

b. When did you last enter the U.S.?  *(Mo/Day/Yr)* **09/24/1999**

c. Where did you last enter the U.S.?  **BLAINE, WA**

d. What was your status when you last entered the U.S.? *(What type of visa did you have, if any)?* **WITHOUT CHECKING**

e. What is your I-94 Number?  **N/A**

f. What is the expiration date of your authorized stay, if any?  **N/A**

g. Have you previously entered the U.S.?  ☒ No  ☐ Yes. If YES, list place, date, and your status for each entry.  *(Attach additional sheets as needed.)*

| Date _____ | Place _____ | Status _____ |
| Date _____ | Place _____ | Status _____ |
| Date _____ | Place _____ | Status _____ |

**FOR INS USE ONLY**

| Returned | Receipt |
|---|---|
| | AUG 10 '00 -7:00 AM 1728 |

Resubmitted

Reloc Sent

Reloc Rec'd

Action:
Interview Date: **11/1/00**

Asylum:
☒ Granted
☐ Denied
☐ Referred
☐ Recommended Approval Date _____

Date of final decision or referral issued **11/27/00**

Total number of persons granted asylum  **1**

**For EOIR Use Only**

**To Be Completed by Attorney or Representative, if any**

☐ Check if G-28/EOIR-28 is attached showing you represent the applicant.

INS VOLAG or PIN # _____

ATTY State License # _____

Form I-589 (Rev. 05-01-98)

52

OMB No. 1115-0086

**Information About You - Continued.**

| | |
|---|---|
| 19. What is your native language?<br>**PUNJABI** | 20. Are you fluent in English?<br>☐ Yes  ☒ No | 21. What other languages do you speak fluently?<br>**N/A** |

22. Have you ever applied to the United States Government or to any other Government(s) for refugee status, asylum, withholding of deportation, or withholding of removal?
☒ No.
☐ I was included in a pending application of my parent(s). However, I am now 21 years old or married so I am filing my own application.
☐ I was included in my spouse's application, but now I wish to file my own application.
☐ Yes. (In what country and what was the decision? Also specify the date of the decision.) Country _____ Date _____
Decision _____

| 23. What country issued your last passport or travel document?<br>**N/A** | 24. Passport #<br>Travel Document #   **N/A** | 25. Expiration Date<br>**N/A** |
|---|---|---|

26. Prior address in last country of residence or country in which you fear persecution. (List Address, City/Town, Province, State, Department, and Country)
**VILL. BRINDPUR, P.O.SHEKHUPUR, TEH.& DIST. KAPURTHALA, PUNJAB, INDIA.**

27. Provide the following information about your education, beginning with the most recent.

| Name of School | Type of School | Location | Attended From (Mo/Yr) | To (Mo/Yr) |
|---|---|---|---|---|
| GOVT. | HIGH SCHOOL | Nabipur, Amritsar, Pb. | 1981 | 1991 |
| KMV COLLEGE | COLLEGE | JALANDHAR, PUNJAB, INDIA | 1991 | 1994 |
| | | | | |
| | | | | |

28. Provide the following information about your residences during the last five years. List your present address first. (Use additional sheets of paper if necessary.)

| Number and Street | City | Province or State | Country | Dates From (Mo/Yr) | To (Mo/Yr) |
|---|---|---|---|---|---|
| 31221 KIMBERLY CT. | UNION CITY | CA | USA | 09/1999 | PRESENT |
| VILL. BRINDPUR | KAPURTHALA | PUNJAB | INDIA | 02/1994 | 06/99 |
| IN HIDING & TRANSIT | | | | 06/99 | 09/99 |
| | | | | | |

29. Provide the following information about your employment during the last five years. List your present employment first. (Use additional sheets of paper if necessary.)

| Name and Address of Employer | Your Occupation | Dates From (Mo/Yr) | To (Mo/Yr) |
|---|---|---|---|
| | HOUSEWIFE | 1994 | |
| | | | |
| | | | |
| | | | |

30. Provide the following information about your parents.

| Name | Country and City of Birth | Location |
|---|---|---|
| KASHMIR SINGH | AMRITSAR, INDIA | INDIA |
| AMARJIT KAUR | AMRITSAR, INDIA | INDIA |

53

OMB No 1115-0086

## PART B. INFORMATION ABOUT YOUR SPOUDE AND CHILDREN.

**Your Spouse**   ☐ I am not married.  *(Skip to Part B, Your Children.)*

| 1. Alien Registration Number (A#) N/A | 2. Passport/ID Card, etc,.# N/A | | |
|---|---|---|---|
| 3. Complete Last Name THIND | 4. First Name JASWANT | 5. Middle Name SINGH | 6. Date of Birth *(Mo/Day/Yr)* 11/11/1960 |
| 7. Date of Marriage *(Mo/Day/Yr)* 02/13/1994 | 8. Place of Marriage AMRITSAR | 9. City and Country of Birth KAPURTHALA, INDIA | |
| 10. Nationality *(Citizenship)* INDIAN | 11. Race, Ethnic or Tribal Group ASIAN | | 12. Sex  ☒ Male  ☐ Female |
| 13. Is this person in the U.S.?  ☐ Yes. *(Complete blocks 13 to 24.)*  ☒ No. *(Specify Location)* ① unknown - last seen in India | | | 14. Social Security # |
| 15. Place of Last Entry in the U.S. N/A | 16. Date of Last Entry in the U.S.? N/A | 17. I-94# N/A | 18. Status when Last Admitted *(Visa type, if any)* N/A |
| 19. Expiration of Status *(mo/Day/Yr)* N/A | 20. Is your spouse in removal, deportation or exclusion proceedings? ☐ Yes ☒ No | | 21. If previously in the U.S., Date of Previous Arrival *(Mo/Day/Yr)* N/A |
| 22. Place of Previous Arrival N/A | | 23. Status at Time of Previous Arrival N/A | |

24. If in the U.S., is this person to be included in this application? *(Check the appropriate box.)*

    ☐ Yes *(Attach one (1) photograph of your spouse in the upper right hand corner of Page 3 on the extra copy of the application submitted for this person.)*
    ☐ No, because my spouse is/has:
        ☐ Filing separately.
        ☐ Separate application pending.
        ☐ Other reasons.

**All of Your Children, Regardless of Age or Marital Status.**

Use Supplement A Form or attach additional pages and documentation (if you have more than two (2) children.)

| 1. Alien Registration Number (A#) N/A | 2. Passport/ID Card, etc.# N/A | | |
|---|---|---|---|
| 3. Complete Last Name THIND | 4. First Name ROMAS | 5. Middle Name SINGH | 6. Date of Birth *(Mo/Day/Yr)* 06/17/1996 |
| 7. City and Country of Birth KAPURTHALA, INDIA | 8. Nationality *(Citizenship)* INDIAN | 9. Race, Ethnic or Tribal Group ASIAN | 10. Sex  ☒ Male ☐ Female |
| 11. Is this child in the U.S.?  ☐ Yes. *(Complete blocks 12 to 22.)*  ☒ No. *(Specify Location)* | | | 12. Social Security # N/A |
| 13. Place of Last Entry in the U.S. N/A | 14. Date of Last Entry in the U.S.? *(Mo/Day/Yr)* N/A | 15. I-94# N/A | 16. Status when Last Admitted *(Visa type, if any)* N/A |
| 17. Expiration of Status *(Mo/Day/Yr)* N/A | 18. Is this child in removal, deportation or exclusion proceedings? ☐ Yes ☒ No ⑥ INDIA | | 19. If previously in the U.S., Date of Previous Arrival *(Mo/Day/Yr)* N/A |
| 20. Place of Previous Arrival N/A | | 21. Status at Time of Previous Arrival N/A | |

22. If in the U.S., is this person to be included in this application? *(Check the appropriate box.)*

    ☐ Yes *(Attach one (1) photograph of your child in the upper right hand corner of Page 3 on the extra copy of the application submitted for this person.)*
    ☐ No, because child is/has:
        ☐ Filing separately.
        ☐ Separate application pending.
        ☐ Over 21 years of age.
        ☐ Married.
        ☐ Other reasons.

OMB No. ...5-0... 

Information About Your Spouse and Children - Continued   *(Use Supplement A Form or attach additional sheets of paper to list additional children.)*

All of Your Children, Regardless of Age or Marital Status.

| Alien Registration Number (A#) N/A | | | 2. Passport/ID card, etc.# N/A | |
|---|---|---|---|---|
| 3. Complete Last Name THIND | 4. First Name SANIYA | 5. Middle Name KAUR | | 6. Date of Birth *(Mo/Day/...)* 01/25/99 |
| 7. City and Country of Birth KAPURTHALA, INDIA | 8. Nationality *(Citizenship)* INDIAN | 9. Race, Ethnic or Tribal Group ASIAN | | 10. Sex ☐ Male ☒ Female |
| 11. Is this person in the U.S.? ☐ Yes. *(Complete blocks 11 to 22.)* ☒ No. *(Specify Location)* | | | 12. Social Security # N/A | |
| 13. Place of Last Entry in the U.S.? N/A | 14. Date of Last Entry in the U.S.? *(Mo/Day/Yr)* N/A | 15. I-94# N/A | 16. Status when Last Admitted *(Visa type, if any)* N/A | |
| 17. Expiration of Status *(Mo/Day/Yr)* N/A | 18. Is this child in removal, deportation or exclusion proceedings? ☐ Yes ☒ No | | 19. If previously in the U.S., Date of Previous Arrival *(Mo/Day/Yr)* N/A | |
| 20. Place of Previous Arrival N/A | | | 21. Status at Time of Previous Arrival N/A | |

22. If in the U.S., is this person to be included in this application? *(Check the appropriate box.)*
   ☐ Yes *(Attach one (1) photograph of your child in the upper right hand corner of Page 9 on the extra copy of the application submitted for this person.)*
   ☐ No, because child is/has:
      ☐ Filing separately.
      ☐ Separate application pending.
      ☐ Over 21 years of age.
      ☐ Married.
      ☐ Other reasons.

---

PART C. INFORMATION ABOUT YOUR CLAIM TO ASYLUM.
       *(Use Supplement B Form or attach additional sheets of paper as needed to complete your responses to the questions contained in Part C.)*

---

. Why are you seeking asylum? Explain in detail what the basis is for your claim. *(Attach additional sheets of paper as needed.)*

   PLEASE SEE THE ATTACHED STATEMENT.

OMB No. 1115-0086

Information About Your Claim to Asylum - Continued.

Have you or any member of your family ever belonged to or been associated with any organizations or groups in your home country, such as but not limited to, a political party, student group, labor union, religious organization, military or paramilitary group, civil patrol, guerrilla organization, ethnic group, human rights group, or the press or media?

☐ No   ☒ Yes. If yes, provide a detailed explanation of your or your relatives' involvement with each group and include the name of each organization or group; the dates of membership or affiliation; the purpose of the organization; your duties or your relatives' duties or responsibilities in the group or organization; and whether you or your relatives are still active in the group(s). *(Attach additional sheets of paper as needed.)*

## PLEASE SEE THE ATTACHED STATEMENT

Have you or any member of your family ever been mistreated or threatened by the authorities of your home country or any other country or by a group or groups that are controlled by the government, or that the government of the country is unable or unwilling to control?

☐ No   ☒ Yes. If YES, was it because of any of the following reasons?   *(Check each of the following boxes that apply.)*

☐ Race   ☒ Religion   ☐ Nationality   ☒ Membership in a particular social group   ☒ Political Opinion

On a separate sheet of paper, specify for each instance, what occurred and the circumstances; the relationship to you of the person involved; the date; the exact location; who it was who took such action against you or your family member(s); his/her position in the government or group; the reason why the incident occurred. Attach documents referring to these incidents, if they are available. *(Attach additional sheets of paper as needed.)*

## PLEASE SEE THE ATTACHED STATEMENT.

Have you or any member of your family ever been accused, charged, arrested, detained, interrogated, convicted and sentenced, or imprisoned in your country or any other country, including the United States?

☐ No   ☒ Yes. If YES, for each instance, specify what occurred and the circumstances; dates; location; the duration of the detention or imprisonment; the reason(s) for the detention or conviction; the treatment received during the detention or imprisonment; any formal charges that were lodged against you or your relatives; the reason for release; treatment after release. Attach documents referring to these incidents if they are available. *(Attach additional sheets of paper as needed.)*

## PLEASE SEE THE ATTACHED STATEMENT.

OMB No. 1115-0086

Information About Your Claim to Asylum - Continued.

5   Do you fear being subjected to torture (severe physical or mental pain or suffering, including rape or other sexual abuse) in your home
    country or any other country if you return?

    ☐ No.   ☒ Yes. If YES, explain why.   *(Attach additional sheets of paper as needed.)*

    PLEASE SEE THE ATTACHED STATEMENT.

6   What do you think would happen to you if you returned to the country from which you claim you would be subjected to persecution?
    Explain in detail and provide information or documentation to support your statement, if available.   *(Attach additional sheets of paper as
    needed.)*

    PLEASE SEE THE ATTACHED STATEMENT.

7   Describe in detail your trip to the United States from your home country. After leaving the country from which you are claiming asylum,
    did you or your spouse or child(ren), who are now in the United States, travel through or reside in any other country before entering the
    United States?

    ☐ No.   ☒ Yes. If YES, for each person, identify each country and indicate the length of stay; the person's status while there; the
    reasons for leaving; whether the person is entitled to return for residence purposes; and if the person applied for refugee status or for
    asylum while there; or why he or she did not do so.   *(Attach additional sheets of paper as needed.)*

    PLEASE SEE THE ATTACHED STATEMENT.

OMB No 1115-0056

---

**PART D. ADDITIONAL INFORMATION ABOUT YOUR APPLICATION FOR ASYLUM.**
*(Use Supplement B Form or attach additional sheets of paper as needed to complete your responses to the questions contained in Part D.)*

---

Do you, your spouse, or your child(ren) now hold, or have you ever held, permanent residence, other permanent status, or citizenship, in any country other than the one from which you are now claiming asylum?

☒ No    ☐ Yes  If YES, explain.  *(Attach additional sheets of paper as needed).*

2. Have you, your spouse, your child(ren), your parents ever filed for, been processed for, or been granted or denied refugee status or asylum by the United States Government?

☒ No    ☐ Yes. If YES, explain the decision and what happened to any status you received as a result of that decision. If you have been denied asylum by an Immigration Judge or the Board of Immigration Appeals, please describe any change in country conditions or your own circumstances since the date of the denial that may affect your eligibility for asylum. *(Attach additional sheets of paper as needed.)*

3. Have you, your spouse, your child(ren), or your parents ever filed for, been processed for, or been granted or denied refugee status or asylum by any other country?

☒ No    ☐ Yes. If YES, explain the decision and what happened to any status you received as a result of that decision. *(Attach additional sheets of paper as needed.)*

4. Have you, your spouse, or child(ren) ever caused harm or suffering to any person because of his or her race, religion, nationality, membership in a particular social group or belief in a particular political opinion, or ever ordered, assisted, or otherwise participated in such acts?

☒ No    ☐ Yes. If YES, describe, in detail, each such incident and your own or your spouse's or child(ren)'s involvement. *(Attach additional sheets of paper as needed.)*

5. After you left your country of claimed persecution for the reasons you have described, did you return to that country?

☒ No    ☐ Yes. If YES, describe, in detail, the circumstances of your visit, for example, the date(s) of the trip(s), the purpose(s) of the trip(s), and the length of time you remained in that country for the visit(s). *(Attach additional sheets of paper as needed.)*

6. Are you filing the application more than one year after your last arrival in the United States?

☒ No    ☐ Yes. If YES, explain why you did not file within the first year after you arrived. You should be prepared to explain at your interview or hearing why you did not file your asylum application within the first year after you arrived. For guidance in answering this question see Part I: Filing Instructions, Section V. "Completing the Form," Part D. *(Attach additional sheets of paper as needed.)*

58

OMB No. 1115-0086

**PART E.  SIGNATURE.**

*After reading the information on penalties in the instructions, complete and sign below.  If someone helped you prepare this application, he or she must complete Part F.*

I certify, under penalty of perjury under the laws of the United States of America, that this application and the evidence submitted with it is all true and correct.  Title 18, United States Code, Section 1546, provides in part: "Whoever knowingly makes under oath, or as permitted under penalty of perjury under Section 1746 of Title 28, United States Code, knowingly subscribes as true, any false statement with respect to a material fact in any application, affidavit, or other document required by the immigration laws or regulations prescribed thereunder, or knowingly presents any such application, affidavit, or other document containing any such false statement or which fails to contain any reasonable basis in law or fact ... shall be fined in accordance with this title or imprisoned not more than five years, or both". I authorize the release of any information from my record which the Immigration and Naturalization Service needs to determine eligibility for the benefit I am seeking.

*WARNING:*  Applicants who are in the United States illegally are subject to removal if their asylum or withholding ... an asylum officer or an Immigration Judge. Any information provided in completing this application may be u... ... ... the institution of, or as evidence in, removal proceedings even if the application is later withdrawn.  Applicants determined to have knowingly made a frivolous application for asylum will be permanently ineligible for any benefits under the Immigration and Nationality Act. See INA 208(d)(6) and 8 CFR 208.18.

| Signature of Applicant  *(The person named in Part A)* | | |
|---|---|---|
| [        *Sarabjit Kaur*        ]  Sign your name so it all appears within the brackets. | | 07/31/00  Date (Mo/Day/Yr) |

| Print Name  SARABJIT KAUR THIND | Write your name in your native alphabet |
|---|---|

Did your spouse, parent or child(ren) assist you in completing this application?   ☐ No   ☐ Yes  *(If YES, list their name(s) and relationship.)*

Name: _____ *(Relationship)* _____ *(Name)* _____ *(Relationship)* _____

Did someone other than you or your spouse, parent or child(ren) prepare this application?   ☐ No   ☒ Yes  *(Complete Part F)*

Asylum applicants may be represented by counsel.  Have you been provided with a list of persons who may be available to assist you, at little or no cost, with your asylum claim?   ☐ No   ☐ Yes

**PART F.  SIGNATURE OF PERSON PREPARING FORM IF OTHER THAN ABOVE.**  *Sign below.*

I declare that I have prepared this application at the request of the person named in Part E, that the responses provided are based on all information of which I have knowledge, or which was provided to me by the applicant and that the completed application was read to the applicant in his or her native language for verification before he or she signed the application in my presence. I am aware that the knowing placement of false information on the Form I-589 may also subject me to civil penalties under 8 U.S.C. Section 1324(c).

| Signature of Preparer *Kamaljit Kaur* | Print Name  KAMALJIT KAUR | Date (Mo/Day/Yr)  07/31/00 |
|---|---|---|
| Daytime Telephone Number ( 510 )  429  7573 | Address of Preparer: Street Number and Name  31221 KIMBERLY CT. | |
| Apt. No. | City  UNION CITY | State  CA | ZIP Code  94587 |

**PART G.  TO BE COMPLETED AT INTERVIEW.**

*You will be asked to complete this Part when you appear before an asylum officer of the Immigration and Naturalization Service (INS), or an Immigration Judge of the Executive Office for Immigration Review (EOIR) for examination.*

I swear (affirm) that I know the contents of this application that I am signing, including the attached documents and supplements, that they are ☒ all true or ☐ not all true to the best of my knowledge and that corrections numbered  (1)  to  (5)  were made by me or at my request.

| _____  Signature of Applicant | Signed and sworn to before me by the above-name applicant on: |
|---|---|
| (b)(7)(c) | NN 14, '00  Date  (Mo/Day/Yr) |
| _____  Write your Name in your Native Alphabet | _____  Signature of Asylum Officer or Immigration Judge |

59

OMB No. 1115-0086

**PART E.   SIGNATURE.**

*After reading the information on penalties in the instructions, complete and sign below. If someone helped you prepare this application, he or she must complete Part F.*

I certify, under penalty of perjury under the laws of the United States of America, that this application and the evidence submitted with it is all true and correct. Title 18, United States Code, Section 1546, provides in part: "Whoever knowingly makes under oath, or as permitted under penalty of perjury under Section 1746 of Title 28, United States Code, knowingly subscribes as true, any false statement with respect to a material fact in any application, affidavit, or other document required by the immigration laws or regulations prescribed thereunder, or knowingly presents any such application, affidavit, or other document containing any such false statement or which fails to contain any reasonable basis in law or fact -- shall be fined in accordance with this title or imprisoned not more than five years, or both". I authorize the release of any information from my record which the Immigration and Naturalization Service needs to determine eligibility for the benefit I am seeking.

Staple your
photograph
here.

*WARNING:*   Applicants who are in the United States illegally are subject to removal if their asylum or withholding claims are not granted by an asylum officer or an Immigration Judge. Any information provided in this application may be used as a basis for the institution of, or as evidence in, removal proceedings even if the application is later withdrawn. Applicants determined to have knowingly made a frivolous application for asylum will be permanently ineligible for any benefits under the Immigration and Nationality Act. See INA 208(d)(6) and 8 CFR 208.18.

Signature of Applicant   *(The person named in Part A)*

[ ~~Sarabjit      Kaur~~ ]          07/31/00

Sign your name so it all appears within the brackets.          Date (Mo/Day/Yr)

| Print Name   SARABJIT KAUR THIND | Write your name in your native alphabet  ਸਰਬਜੀਤ ਕੌਰ |
|---|---|

Did your spouse, parent or child(ren) assist you in completing this application?  ☐ No  ☐ Yes  *(If YES, list their name(s) and relationship.)*

*(Name)* _____ *(Relationship)* _____   *(Name)* _____ *(Relationship)* _____

Did someone other than you or your spouse, parent or child(ren) prepare this application?  ☐ No  ☒ Yes  *(Complete Part F)*

Asylum applicants may be represented by counsel.  Have you been provided with a list of persons who may be available to assist you, at little or no cost, with your asylum claim?  ☐ No  ☐ Yes

**PART F.  SIGNATURE OF PERSON PREPARING FORM IF OTHER THAN ABOVE.**   *Sign below.*

I declare that I have prepared this application at the request of the person named in Part E, that the responses provided are based on all information of which I have knowledge, or which was provided to me by the applicant and that the completed application was read to the applicant in his or her native language for verification before he or she signed the application in my presence.  I am aware that the knowing placement of false information on the Form I-589 may also subject me to civil penalties under 8 U.S.C. Section 1324(c).

| Signature of Preparer  Kamaljit Kaur | Print Name   KAMALJIT KAUR | Date (Mo/Day/Yr)   07/31/00 |
|---|---|---|
| Daytime Telephone Number  (510 ) 429 7573 | Address of Preparer: Street Number and Name   31221 KIMBERLY CT. | |
| Apt. No. | City   UNION CITY | State   CA | ZIP Code  94587 |

**PART G.  TO BE COMPLETED AT INTERVIEW.**

*You will be asked to complete this Part when you appear before an asylum officer of the Immigration and Naturalization Service (INS), or an Immigration Judge of the Executive Office for Immigration Review (EOIR) for examination.*

I swear (affirm) that I know the contents of this application that I am signing, including the attached documents and supplements, that they are ☒ all true or ☐ not all true to the best of my knowledge and that corrections numbered ( *1* ) to ( *5* ) were made by me or at my request.

Signed and sworn to before me by the above-name applicant on:

~~Sarabjit Kaur~~          *NOV 14, '00*

Signature of Applicant          Date (Mo/Day/Yr)

(b)(7)(c)  ਸਰਬਜੀਤ ਕੌਰ

Write your Name in your Native Alphabet          Signature of Asylum Officer or Immigration Judge

Page 8 (Rev. 05-01-98) N

60

*Statement Attachment to form I-589*
*Sarabjit Kaur Thind*

I am a Sikh by religion and a citizen of India. I am seeking asylum in this country because I was persecuted in my home country due to political opinions and activities of our family towards Khalistan, a separate state for the Sikhs and due to our belief in Sikh religion and our political activities.

After the anti-Sikh riots of 1984 when the Sikhs were killed by the Hindu mobs in large numbers, in many parts of the country, I do not find any suitable place in any part of India where I could move or live safely, with honor and with dignity. I foresee and fear being subjected to torture (severe physical or mental pain or suffering, including rape or other sexual abuse) in my home country on my return.

My marriage took place with Jaswant Singh Thind of Brindpur village in Kapurthala district of Punjab. The family of my in laws like my parents' family also belonged to Akali Dal of Simranjit Singh Mann. MY father-in-law Joginder Singh was a famous local leader of Akali Dal Mann. He was elected as village Sarpanch as a candidate of Akali Dal Mann during the Panchayat elections of January 1993.

My husband was a devoted Sikh and a staunch believer of Khalistan. He was an active member of Shiromani Akali Dal (Amritsar). He inspired me too to join this party. I also became its member on April 13, 1996, because this party was vigorously working for the creation of Khalistan, a separate state for the Sikhs, in a peaceful manner that reconciled with my thoughts.

My in-laws have an agricultural farm near Mand area (the area between two rivers Sutlej and Beas). Since insurgency of militancy in Punjab, this area always remained a good hideout for the militants. The Indian security forces had always a hard time to pull the militants out from this area and many times, they exchanged fires with each other. At one time, the Government opened the gates of Bhakhra Dam to flush out the militants from this area, by flooding it with water, which caused a great havoc and devastation.

While working at our farm, my husband came across a group of some Sikh young men who on enquiry told him that they had left their houses and were hiding in the Mand Area to revenge those policemen who were responsible for killing, kidnapping and raping their family members.

On April 03, 1995 the security forces of India launched Mand Operation to clean up Mand Area from the militants where they were said to hide themselves

61

2

after hitting their targets. My father-in-law was working in our farm when the police arrested him to get information about a militant who had died near our farm in police firing. My father-in-law was asked to identify him.

The dead young man belonged to village Shekhupur. My father-in-law was alleged to have contacts with him. The police beat him up with sticks and leather belts, broke his teeth, hanged him upside down. He was beaten, tortured and detained for five days. The police threatened to kill him if he failed to provide them the requisite information about other militants. My father-in-law later was thrown near our farm in a very critical condition. With in few hours after that he succumbed to his injuries.

The High Command of our Akali Dal (Mann) decided to observe 'Ghallughara divas' (Massacre day) on June 06, 1999 at Akal Takhat in Golden Temple Amritsar and to honor the families of martyrs. It was also decided to issue a Souvenir on Sikh Struggle and Operation Blue Star. Our district President, Mr. Jagir Singh Waldala took the responsibility for its publication. He assigned my husband the duty to collect information for its publication from various other available sources including the other district Presidents.

The government was adamant to stop Shiromani Akali Dal (Mann) from observing Ghallughara Divas at Akal Takhat Amritsar. To do so, the police arrested many workers, members and leaders by raiding their houses. The police put barricades on all the roads leading to Amritsar. The Government deployed police in large number in the city, on bus and railway stations, to prevent the people to reach Akal Takhat Amritsar.

The police also got the information about the souvenir. On June 05, 1999, the police raided our house and arrested my husband and me. During the search of our house, the police recovered a bunch of photographs, a few hand written and typed letters and some other material collected by my husband for its publication in the Souvenir. The police also recovered a few books, magazines and pamphlets on Khalistan during the search of our house.

The police arrested both of us and we were taken to the Sadar Police Station Kapurthala where we were called as Khalistanies and were interrogated about our activities in the movement of Khalistan. The police officer alleged that we were engaged in anti-nation activities and the activities to instigate the peace loving people of Punjab. The police took my husband to CIA Kapurthala while I was detained and kept there. During my custody, I was humiliated, slapped, molested and raped.

I was released after two days at the intervention of our village Panchayat. My husband was never released. When I inquired about my husband from the

police, I was told that he has escaped from the police custody while he was being taken to Jalandhar from Kapurthala. Our district President Mr. Jagir Singh Wadala and other party leaders also helped me to search my husband, but we all were unable to locate him. I have fears that the police have eliminated my husband.

After that the police continued to threat my family and me. We were warned to face dire consequences if we ever dared to initiate any action or complaint against police. I was very much frightened. I went into hiding.

After discussion with my family, I decided to save my life and honor by escaping from India. My father contacted a travel agent. The agent provided me a passport in the name of Amraj Kaur. He brought me to (Vancouver) Canada via London (UK) and helped me to reach Union City in the United States of America, after crossing its border from Blaine, WA.

# EXHIBIT B



**U.S. Department of Justice**

Immigration and Naturalization Service
San Francisco Asylum Office
PO Box 77530
San Francisco, CA 94107

Date:  2 8 NOV 2000

A78646333  Sarabjit THIND

Sarabjit Thind
31221 Kimberly Ct.
Union City, CA 94587

**Asylum Approval**

Dear Ms. Thind:

This letter refers to your request for asylum in the United States filed on Form I-589.

It has been determined that you are eligible for asylum in the United States. Attached please find a completed Form I-94, Arrival Departure Record, indicating that you have been granted asylum status in the United States pursuant to §208(a) of the Immigration and Nationality Act (INA) as of November 27, 2000. You have been granted asylum in the United States for an indefinite period. This grant of asylum includes your dependents listed above who are present in the United States, were included in your asylum application, and for whom you have established a qualifying relationship by a preponderance of evidence.

In order to request derivative asylum status for any spouse or child who was not included in your asylum request, you must submit a Form I-730, Refugee and Asylee Relative Petition, to the Immigration and Naturalization Service (INS).

You are eligible for employment authorization for as long as you remain in asylum status. Your dependents listed above are also eligible for employment authorization, so long as they retain derivative asylum status. However, you must apply for and obtain an Employment Authorization Document (EAD) as evidence of your eligibility to work in the United States. To obtain an EAD, you must submit to the INS a Form I-765, Application for Employment Authorization. We recommend that you include a copy of this letter when applying for work authorization as an asylee.

If you plan to depart the United States, you must obtain permission to return to the United States before you leave this country. If you do not obtain permission, you may be unable to reenter the United States, or you may be placed in proceedings where you will be required to establish your asylum status. You may apply for a Refugee Travel Document on a Form I-131, Application for Travel Document.

**11**

Asylum status does not give you the right to remain permanently in the United States. Asylum status may be terminated if you no longer have a well-founded fear of persecution because of a fundamental change in circumstances, you have obtained protection from another country, or you have committed certain crimes or engaged in other activity that makes you ineligible to retain asylum status in the United States. See INA § 208(c)(2) and 8 CFR §208.22(a).

You may apply for lawful permanent resident status under section 209(b) of the Immigration and Nationality Act after you have been physically present in the United States for a period of one year after the date you were granted asylum status. To apply for lawful permanent residence status, you must submit to the INS Nebraska Service Center (NSC) a Form I-485, Application to Register Permanent Residence or Adjust Status at the following address: P.O. Box 87485, Lincoln, Nebraska, 68501-7485.

You must notify the INS of any change of address within ten days of any such change. You may obtain a Form AR-11 at your nearest post office or INS office to comply with this requirement.

You may obtain any of the forms noted above at an INS District Office or INS Forms Center. Instructions for the forms explain how to complete the forms, what documents to attach and where to send the completed forms.

Sincerely,

(for)
Emilia Bardini,
Director, San Francisco Asylum Office

cc:

Enclosure: I-94 Card(s)

# EXHIBIT C



**U.S. Department of Justice**
Immigration and Naturalization Service

*Nebraska Service Center*
*P.O. Box 82521*
*Lincoln, NE 68501-2521*

MAR 2 2004

A78646333
Refer To File No.
LIN0304855268
LIN0304855273
LIN0304855279

SARABJIT KAUR THIND
31221 KIMBERLY COURT
UNION CITY CA 94587

Dear Madam:

This refers to the Refugee/Asylee Relative Petitions filed by you on December 2, 2002 on behalf of Jaswant Singh Thind, Romas Singh Thind, and Saniya Kaur Thind under section 208 of the Immigration and Nationality Act, as amended.

To request benefits for an accompanying or following-to-join relative under section 208 of the Act, a petitioner must file Form I-730 within two years of the date he or she was granted asylum status.

Title 8, Code of Federal Regulations, section 208.21 states in pertinent part:

(c) <u>Spouse or child in the United States</u>. When a spouse or child of an alien granted asylum is in the United States, but was not included in the asylee's application, the asylee may request following-to-join benefits for his/her spouse or child by filing for each qualifying family member a separate Form I-730, Refugee/Asylee Relative Petition . . . (Additionally, a separate Form I-730 must be filed by the asylee for each qualifying member before February 28, 2000 or within 2 years of the date in which he/she was granted asylum status, whichever is later, unless it is determined by the Service that this period should be extended for humanitarian reasons.

(d) <u>Spouse or child outside the United States</u>. When a spouse or child of an alien granted asylum is outside the United States, the asylee may request following-to-join benefits for his/her spouse or child(ren) by filing a separate Form I-730 . . . A separate Form I-730 for each qualifying member must be filed before February 28, 2000 or within two years of the date in which he/she was granted asylum status, whichever is later, unless it is determined by the Service that this period should be extended for humanitarian reasons.

THIND, Jaswant S.; et al.                        Page 2                        LIN 03 048 55268; et al.

Service records indicate that you were granted asylum in the United States on November 27, 2000. These petitions were filed on December 2, 2002, more than two years after you were granted asylum in the United States. It does not appear that circumstances exist which would warrant the extension of the filing period. Therefore, you are ineligible to file Form I-730 at this time, and these petitions may not be approved.

In view of the above, this petition must be and hereby is denied.

This denial may not be appealed. However, if you believe that you can overcome the grounds for denial, you may submit a new petition with the appropriate documentation to this office.

Sincerely,

Terry E. Way
Director
NSC/GMG060


cc:  THIND, Jaswant S.      A96157607
     THIND, Romas S.        A96157608
     THIND, Saniya K.       A96157609

# EXHIBIT D



U.S. Department of Homeland Security
P.O. Box 82521
Lincoln, NE 68501-2521

U.S. Citizenship
and Immigration
Services

July 18, 2006

Refer to File Number:
A96 157 607/LIN-03-048-55268

SARABJIT KAUR THIND
2925 MONUMENT BLVD APT 128
CONCORD CA 94520

Dear Sir or Madam:

Case Type:  FORM I-730, REFUGEE/ASYLEE RELATIVE PETITION
Beneficiary: THIND, Jaswant Singh

This refers to the Refugee/Asylee Relative Petition filed by you on December 2, 2002, on behalf of Jaswant Singh Thind, under section 208 of the Immigration and Nationality Act, as amended.

On July 13, 2006 the Service sent you a notice that your petition has been reopened for approval, pending a fingerprint check. However, the appointment for the fingerprinting was mistakenly scheduled before you could be notified, therefore; a new appointment will have to be scheduled. Enclosed is the I-797C notification of the original date, time, and location of your scheduled fingerprint appointment. Please take this letter, along with the enclosed I-797C, to the address highlighted on the bottom of the notification to have your appointment rescheduled. To process your petition, the U.S. Citizenship & Immigration Services (USCIS) must take your fingerprints and have them cleared by the FBI, consequently; if you fail to request rescheduling, your petition will be considered abandoned.

The Service apologizes for any inconvenience this may cause.

If you have any questions regarding this notice, please call 1-800-375-5283.

Sincerely,

F. Gerard Heinauer
Acting Director

NSC/KMC/404

# EXHIBIT E

Department of Homeland Security
U.S. Citizenship and Immigration Services

**I-797C, Notice of Action**

## Fingerprint Notification

NOTICE DATE
07/10/2006

| CASE TYPE | | SOCIAL SECURITY NUMBER | USCIS A# |
|---|---|---|---|
| I730 Application where Beneficiary is in the U.S. | | | A096157607 |

| APPLICATION NUMBER | CODE | SERVICE CENTER | PAGE |
|---|---|---|---|
| LIN0304855268 | I | NSC | 1 of 1 |

APPLICANT NAME AND MAILING ADDRESS
JASWANT SINGH THIND
2925 MONUMENT BLVD APT 16
CONCORD, CA 94520

To process your application, the U. S. Citizenship & Immigration Services must take your fingerprints and have them cleared by the FBI.  **PLEASE APPEAR AT THE BELOW APPLICATION SUPPORT CENTER AT THE DATE AND TIME SPECIFIED.**  If you are unable to do so, complete the bottom of this notice and return it with the original notice to the address below.  **RESCHEDULING YOUR APPOINTMENT WILL DELAY YOUR APPLICATION.  IF YOU FAIL TO APPEAR AS SCHEDULED BELOW AND FAIL TO REQUEST RESCHEDULING, YOUR APPLICATION WILL BE CONSIDERED ABANDONED.**

| APPLICATION SUPPORT CENTER | DATE AND TIME OF APPOINTMENT |
|---|---|
| USCIS OAKLAND<br>2040 TELEGRAPH AVE.<br>OAKLAND, CA 94612 | 07/13/2006<br>8:00 AM |

**WHEN YOU GO TO THE APPLICATION SUPPORT CENTER TO HAVE YOUR FINGERPRINTS TAKEN, YOU MUST BRING:**
1. **THIS APPOINTMENT NOTICE** and
2. **PHOTO IDENTIFICATION.**  Naturalization applicants must bring their Alien Registration Card.  All other applicants must bring a passport, driver's license, national ID, military ID, or State-issued photo ID.  If you appear without proper identification, you may not be fingerprinted.

**PLEASE DISREGARD THIS NOTICE IF YOUR APPLICATION HAS ALREADY BEEN GRANTED.**

### REQUEST FOR RESCHEDULING

Please reschedule my appoinment for the next available:  ☐ Wednesday afternoon    ☐ Saturday afternoon

U. S. Citizenship & Immigration Services (USCIS) cannot guarantee the day preferred, but will do so to the extent possible.
Upon receipt of your request, you will be provided a new appointment notice.  Please mail your request to:

USCIS OAKLAND
2040 TELEGRAPH AVE.
OAKLAND, CA 94612

If you have any questions regarding this notice, please call 1-800-375-5283.

APPLICANT COPY

APPLICATION NUMBER
LIN0304855268

### WARNING!

*Due to limited seating availability in our lobby area, only persons who are necessary to assist with transportation or completing the fingerprint worksheet should accompany you.*
*If you have open wounds or bandages/casts when you appear, the USCIS may reschedule your appointment if it is determined your injuries will interfere with fingerprinting.*

# EXHIBIT F



U.S. Department of Homeland Security
P.O. Box 82521
Lincoln, NE 68501-2521

U.S. Citizenship
and Immigration
Services

OCT 0 5 2007

Refer to File Number:
LIN0304855268
A96157607

SARABIJIT KAUR THIND
C/O JONATHAN KAUFMAN
LAW OFFICES OF JONATHAN M KAUFMAN
220 MONTGOMERY STREET, SUITE 976
SAN FRANCISCO, CA 94104

Dear Sir or Madam:

Case Type:  FORM I-730, REFUGEE/ASYLEE RELATIVE PETITION
Beneficiary: JASWANT SINGH THIND

## INTENT TO DENY

This refers to the Refugee/Asylee Relative Petition filed by you on December 2, 2002, on behalf of Jaswant Singh Thind, under section 208 of the Immigration and Nationality Act, as amended.

This Service is in possession of adverse information that you may be unaware of regarding your Refugee/Asylee Relative Petition on behalf of Jaswant Singh Thind. Pursuant to Title 8, Code of Federal Regulations, Part 103.2(b)(16), we hereby provide you with such information before rendering a final decision.

Section 208(b)(1) of the INA states:

In general. - The Attorney General may grant asylum to an alien who has applied for asylum in accordance with the requirements and procedures established by the Attorney General under this section if the Attorney General determines that such alien is a refugee within the meaning of section 101(a)(42)(A).

Section 208(b)(2)(A) of the INA states in pertinent part:

In general. - Paragraph (1) shall not apply to an alien if the Attorney General determines that –

... (v) the alien is inadmissible under subclause (I), (II), (III), (IV), or (VI) 2/ of section 212(a)(3)(B)(i) or removable under section 237(a)(4)(B) (relating to terrorist activity), unless, in the case only of an alien inadmissible under subclause (IV) of section 212(a)(3)(B)(i), the Attorney General determines, in the Attorney General's discretion, that there are not reasonable grounds for regarding the alien as a danger to the security of the United States...

SARABIJIT KAUR ⎞⏉.⏉ND
Page 2

Section 212(a)(3)(B)(i)(VI) of the INA, as amended by the REAL ID Act of 2005, describes an alien who is inadmissible and states in pertinent part:

Any alien who . . . (VI) is a member of a terrorist organization described in clause (vi)(III), unless the alien can demonstrate by clear and convincing evidence that the alien did not know, and should not reasonably have known, that the organization was a terrorist organization . . . is inadmissible.

The INA, at section 212(a)(3)(B)(vi)(III) defines the term "terrorist organization," in part, to include an organization "that is a group of two or more individuals, whether organized or not, which engages in, or has a subgroup which engages in, the activities described in sub clauses (I) through (VI) of clause (iv)."

In regards to the creation of AISSF as a subgroup, a USCIS RIC (Resource Information Center) report on the All India Sikh Students Federation (AISSF) cites: "it was formed in the early 1940s by Sardar Swarup Singh, former president of the organization, to help bring educated Sikh youths into the Akali Dal, a predominantly Sikh political party in Punjab (Telford Nov 1992, IRBDC 1 Oct 1989), and to promote and propagate Sikhism amongst the college-going Sikh students (UK-COIS Apr 2006)."

The report further states that the Khalistani (Sikh separatist) movement gained momentum following the 1984 Sikh occupation of the Golden Temple in Amritsar, India, and the subsequent Indian army attack ("Operation Blue Star") on the temple, in which hundreds of Sikhs, including charismatic Sikh leader Jarnail Singh Bhindranwale, were killed. The AISSF is one of many Sikh groups that were transformed during this very volatile period in Indian history (DIS Sep 2000, TSS 13 Sep 2003, UK-COIS Apr 2006). The April 2006 report on India by the UK's Country of Origin Information Service cites April 1996 information from British officials working in India in stating that "[w]hile the AISSF sought a separate Sikh homeland, it did not fight for it until militancy erupted [in Punjab]...in 1981. From then onwards, a number of AISSF members joined the ranks of the militants" (UK-COIS Apr 2006). Likewise, a September 2003 SIKH SENTINEL article states: "...[T]he All India Sikh Student Federation (AISSF)...was a non-violent group until it split into multiple wings, some of which advocated violence" (TSS 17 Sep 2003). Dr. Chima found this depiction to be "generally correct in the sense that the AISSF never officially endorsed violence before 1984. Instead, it was a mass-based organization with probably over 100,000 members, mostly students, throughout Punjab. But, it was rumored to have a miniscule, but effective, 'armed wing' called the 'Deshmesh Regiment' [comprised] of only a few members to engage in selective political assassinations on behalf of the upper-most leadership of the AISSF" (Chima 28 Sep 2006).

According to a 1992 Department of State background information report on terrorist groups (found on the www.fas.org site), "Sikh terrorism is sponsored by a number of Indian and expatriate Sikh groups who want to carve out an independent Sikh state called Khalistan (`Land of the Pure") from Indian territory. Sikh violence outside India, which surged following the Indian Army's 1984 assault on the Golden Temple, Sikhism's holiest shrine, has decreased but remains high. Groups that have carried out acts of terrorism include the Dashmesh or 10th Regiment (active in India, Germany, and Canada); Dal Khalsa; Babbar Khalsa (India, Western Europe, Canada); and the All-India Sikh Students Federation (militant wing of the main Sikh party, the Akali Dal, now splintered)."

The DoS report goes on to state: "Regular and bloody attacks mounted frequently in India against Hindus and against Indian officials and facilities, particularly in Punjab; they include assassinations, bombings, and kidnappings. Sikh extremists probably bombed the Air India jet downed over the Irish Sea in June 1985, killing 329 passengers and crew. On the same day, a bomb planted by Sikhs on an Air India flight from

SARABIJIT KAUR . HIND
Page 3

Vancouver exploded in Tokyo's Narita airport, killing two Japanese baggage handlers. In 1991, Sikh terrorists attempted to assassinate the Indian Ambassador in Romania--once India's senior police officer in Punjab (1986-89)--and kidnapped and held the Romanian Charge in New Delhi for seven weeks. Sikh attacks within India, ranging from kidnappings and bombings to assassinations, continue at a high level. Indian security forces captured or killed many Sikh leaders in 1992, however, and total civilian deaths in Punjab have dropped as compared to 1991, when more than 3,300 civilians died. There was a marked drop in the number of killings during the closing months of 1992."

· Quoting the US CIS report again, "The International Sikh Youth Federation (ISYF), which was founded as the international branch of the All India Sikh Students Federation (AISSF) (PSEPC 17 Nov 2004), is aggressive and effective in its international fund raising activities (Global Security 27 Apr 2005, Satp.org undated). On June 27, 2002, the US Treasury Department added the ISYF to its listing of Specially Designated Nationals and Blocked Persons (OFAC 27 Jun 2002), and on April 29, 2004, Secretary of State Colin Powell, in consultation with the Attorney General, placed the ISYF on the Terrorist Exclusion List (USDOS 29 Dec 2004)."

A Canadian government source at http://www.ps-sp.gc.ca/prg/ns/le/cle-en.asp states: "The International Sikh Youth Federation (ISYF) was founded in 1984 in the United Kingdom as an international branch of the All India Sikh Students' Federation (AISSF) with centers in several countries, including Canada. The ISYF is a Sikh organization whose aim is to promote Sikh philosophy and the establishment of an independent Sikh nation called Khalistan. In the pursuit of their goal, the ISYF does not hesitate to resort to violence. Since 1984, its members have been engaged in terrorist attacks, assassinations and bombings mostly against Indian political figures, but also against moderate members of the Sikh community opposed to their extremist ways. The ISYF collaborates and/or associates with a number of Sikh terrorist organizations, notably Babbar Khalsa (BK), the Khalistan Liberation Force (KLF) and the Khalistan Commando Force (KCF)."

The INA, at section 212(a)(3)(B)(vi)(III), defines a terrorist organization as an organization that is a group of two or more individuals, whether organized or not, which engages in, or has a subgroup which engages in, the activities described in subclauses (I) through (VI) of clause (iv).

Due to its subgroups, AISSF and ISYF, the Akali Dal meets the current definition of an undesignated terrorist organization at INA section 212(a)(3)(B)(vi)(III). The violent activities of the AISSF and the ISYF match those described in section 212(a)(3)(B)(iii) and 212(a)(3)(B)(iv). Thus, the beneficiary is inadmissible under INA section 212(a)(3)(B)(i)(VI) based on their and your membership in the Akali Dal.

The petition may be denied based upon the above information. However, you are hereby granted thirty days from the date of this letter to submit to this office a written rebuttal to the adverse information.

Sincerely,

F. Gerard Heinauer
Director

NSC/KMC/EX404

# EXHIBIT G

## THE LAW OFFICES OF
## JONATHAN M. KAUFMAN
220 Montgomery Street, Suite 976
San Francisco, CA 94104
(415) 956-4765
Fax (415) 956-1664

October 15, 2007

Director
U.S. Department of Homeland Security
Citizenship and Immigration Services
Nebraska Service Center
P.O. Box 82521
Lincoln, NE 68501-2521

      Re:      I-730
                 Beneficiary: Jaswant Singh Thind
                 A96157607
                 LIN0304855268

Dear Sir/Madam:

I am attorney for petitioner Sarabjit Kaur Thind.

This letter is in response to the USCIS' October 5, 2007 notice of intent to deny the I-730 petitioner filed on behalf of her husband, Jaswant Singh Thind.

A declaration executed by petitioner and beneficiary is enclosed. They both attest that they have never engaged in acts of terrorism, knowingly joined, aided, or supported any group or organization that has engaged in or committed any acts of terrorism.

You have alleged that the beneficiary is ineligible for asylum because he is inadmissible under INA §212(a)(3)(B)(i)(VI) due to his and petitioner's past membership in the Akali Dal Mann party in India. No other basis for denial is cited.

The I-730 should be approved because petitioner and beneficiary's membership in the Akali Dal Mann party does not render the beneficiary inadmissible as charged.

The Akali Dal is the oldest of the Sikh political parties in the Punjab. It is a lawful political party. None of the evidence cited in the notice of intent to deny alleges that the Akali Dal party has ever been deemed a terrorist organization by any government, advocated terrorism, or committed acts of terrorism.

The evidence cited in the notice of intent to deny alleges that persons who were at some point in time associated with the Akali Dal are alleged to have established other organizations, independent of the Akali Dal, that advocated and committed acts of terrorism. None of the evidence supports your finding that the other organizations described in your notice of intent to deny were "subgroups" of the Akali Dal.

None of the evidence cited supports your finding that the Akali Dal Mann party condoned the terrorist acts of any individuals, or associated itself with any of the groups described in the notice of intent to deny.

None of the evidence cited supports a finding that the Akali Dal Mann party has ever endorsed or espoused terrorist activity, or persuaded others to endorse or espouse terrorist activity, or supported a terrorist organization.

There being is no evidence that the Akali Dal Mann party is, or has ever been, a terrorist organization, there is no basis for you to find that petitioner or beneficiary knew, or should have known, that the Akali Dal Mann party was a terrorist organization. Petitioner and beneficiary's membership in the Akali Dal Mann party alone does not render the beneficiary inadmissible as charged.

The factual assertions made in petitioner's Form I-589 do not support a finding that the petitioner or the beneficiary ever engaged in, espoused, or endorsed terrorist activity. The statement attached to the Form I-589 asserts that petitioner and beneficiary advocated political change "in a peaceful manner". The act that resulted in their past persecution in India was an observance organized to honor families of martyrs who had perished in the disturbance that had engulfed the Punjab. Nothing alleged in the Form I-589 can be construed as evidence that either petitioner or beneficiary belonged to a terrorist organization, or knew or should have known that they belonged to a terrorist organization.

The I-730 should be approved because the evidence does not support a finding that the beneficiary is inadmissible under INA §212(a)(3)(B)(i)(IV).

Thank you.

Yours truly,

Jonathan M. Kaufman

JMK/jmk
Encl.

## DECLARATION

We, Sarabjit Kaur Thind and Jaswant Singh Thind, do hereby declare:

I, Sarabjit Kaur Thind, was born on January 15, 1973 in India. I am a citizen of India.

I, Jaswant Singh Thind, was born on November 11, 1960 in India. I am a citizen of India.

We are husband and wife. We were married on February 13, 1994 in India.

We reside at 2925 Monument Blvd., #128, Concord, CA 94520.

We are executing this declaration in support of the I-730 filed by Sarabjit Kaur Thind on behalf of Jaswant Singh Thind, LIN0304855268, and in response to the notice of intent to deny the petition issued on October 5, 2007.

We are no longer members of the Shiromani Akali Dal (Mann) political party. I, Sarabjit Kaur Thind, ended my party membership when I came to the United States in 1999. I, Jaswant Singh Thind, ended my party membership when I came to the United States in 2002. Since leaving India and coming to the United States we have not participated in any activities associated with the Shiromani Akali Dal (Mann) or donated any money or property of any kind to the political party.

We have never belonged to, aided, or supported, the All Indian Sikh Student Federation, The International Sikh Youth Federation, Babbar Khalsa, the Khalistan Liberation Force, or the Khalisatan Commando Force.

We have never associated with individuals who belonged to All Indian Sikh Student Federation,   The International Sikh Youth Federation, Babbar Khalsa, the Khalistan Liberation Force, or the Khalisatan Commando Force, in India, the United States, or anywhere else in world.

We have never engaged in, or committed, any of the acts defined in Sections 212(a)(3)(B)(iii)-(iv). We have never associated with any individual or group that has engaged in, or committed, any of the acts defined in Sections 212(a)(3)(B)(iii)-(iv).

We declare under penalty of perjury that the foregoing is true and correct and that this was

executed on October 11, 2007 at San Francisco, California.

SARABJIT KAUR THIND

JASWANT SINGH THIND

# EXHIBIT H



U.S. Department of Homeland Security
P.O. Box 82521
Lincoln, NE 68501-2521

FEB 2 7 2008

**U.S. Citizenship
and Immigration
Services**

Refer to File Number:
LIN0304855268
A96157607

SARABIJIT KAUR THIND
C/O JONATHAN KAUFMAN
LAW OFFICES OF JONATHAN M KAUFMAN
220 MONTGOMERY STREET SUITE 976
SAN FRANCISCO CA 94104

Dear Sir or Madam:

Case Type:  Form I-730, Refugee/Asylee Relative Petition
Beneficiary: JASWANT SINGH THIND

## DECISION

This refers to the Refugee/Asylee Relative Petition filed by you on December 2, 2002, on behalf of Jaswant Singh Thind, under section 208 of the Immigration and Nationality Act, as amended.

To be eligible for classification as a following-to-join relative under Section 208 of the Act, the beneficiary must meet the eligibility requirements and the relationship between the petitioner and the beneficiary must be established by a preponderance of the evidence.

Section 208(b)(1) of the INA, states in pertinent part:

In general. - (A) Eligibility- The Secretary of Homeland Security or the Attorney General may grant asylum to an alien who has applied for asylum in accordance with the requirements and procedures established by the Secretary of Homeland Security or the Attorney General under this section if the Secretary of Homeland Security or the Attorney General determines that such alien is a refugee within the meaning of section 101(a)(42)(A).

Section 208(b)(3)(A) of the INA, states:

In general- A spouse or child (as defined in section 101(b)(1)(A), (B), (C), (D), or (E)) of an alien who is granted asylum under this subsection may, if not otherwise eligible for asylum under this section, be granted the same status as the alien if accompanying, or following to join, such alien.

Title 8, Code of Federal Regulations, part 208.21(a) states:

SARABIJIT KAUR THIND
Page 2

(a) Eligibility. In accordance with section 208(b)(3) of the Act, a spouse, as defined in section 101(a)(35) of the Act, 8 U.S.C. 1101(a)(35), or child, as defined in section 101(b)(1) of the Act, also may be granted asylum if accompanying, or following to join, the principal alien who was granted asylum, unless it is determined that the spouse or child is ineligible for asylum under section 208(b)(2)(A)(i), (ii), (iii), (iv) or (v) of the Act for applications filed on or after April 1, 1997, or under § 208.13(c)(2)(i)(A), (C), (D), (E), or (F) for applications filed before April 1, 1997.

Section 208(b)(2) of the INA, states in pertinent part:

(A) In general. - Paragraph (1) shall not apply to an alien if the Attorney General determines that -

...(v) the alien is described in subclause (I), (II), (III), (IV), or (VI) of section 212(a)(3)(B)(i) or section 237(a)(4)(B) (relating to terrorist activity), unless, in the case only of an alien described in subclause (IV) of section 212(a)(3)(B)(i), the Attorney General determines, in the Attorney General's discretion, that there are not reasonable grounds for regarding the alien as a danger to the security of the United States; ...

Section 212(a)(3)(B) of the INA states in pertinent part:

(B) Terrorist activities-...

... (i) In general.-Any alien who-...

... (VI) is a member of a terrorist organization described in clause (vi)(III), unless the alien can demonstrate by clear and convincing evidence that the alien did not know, and should not reasonably have known, that the organization was a terrorist organization;

(VII) endorses or espouses terrorist activity or persuades others to endorse or espouse terrorist activity or support a terrorist organization;

... (IX) is the spouse or child of an alien who is inadmissible under this subparagraph, if the activity causing the alien to be found inadmissible occurred within the last 5 years, is inadmissible.

On October 5, 2007, the Service sent a Notice of Intent to Deny asking for clarification on the petitioner's and the beneficiary's purported memberships (current and past) in the Akali Dal Mann.

In response, on October 15, 2007 you submitted a letter from your attorney. This letter was provided to rebut the Service's intent to deny. The information submitted was declarations from the petitioner and the beneficiary.

Your attorney stated: "The Akali Dal is the oldest of the Sikh political parties in the Punjab. It is a lawful political party. None of the evidence cited in the notice of intent to deny alleges that the Akali Dal party has ever been deemed a terrorist organization by any government, advocated terrorism, or committed acts of terrorism."

However, this group is on the terrorist knowledge database for India.

The provisions of the REAL ID Act address four basic homeland security issues:

SARABIJIT KAUR THIND
Page 3

1) Asylum reform to make it more difficult for terrorists to abuse the asylum system in order to remain in the United States while they plan and carry out attacks;

2) Completion of the border fence authorized by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 to protect the U.S. Naval Base in San Diego;

3) Reform of admissibility and deportability laws to make it more difficult for terrorists to enter the United States legally, like the 19 9/11 hijackers did, and to ensure that the government can deport them if they do manage to enter; and

4) Minimum standards for the issuance of state driver's licenses if such licenses are to be used for Federal identification purposes, including to board commercial aircraft and to enter Federal buildings.

The INA, Section 212(a)(3)(B)(vi)(III), defines a terrorist organization as an organization that is a group of two or more individuals, whether organized or not, which engages in, or has a subgroup which engages in, the activities described in subclauses (I) through (VI) of clause (iv).

In regard to the creation of AISSF as a subgroup, a USCIS RIC (Resource Information Center) report on the All India Sikh Students Federation (AISSF) cites: "it was formed in the early 1940s by Sardar Swarup Singh, former president of the organization, to help bring educated Sikh youths into the Akali Dal, a predominantly Sikh political party in Punjab (Telford Nov 1992, IRBDC 1 Oct 1989), and to promote and propagate Sikhism amongst the college-going Sikh students (UK-COIS Apr 2006)."

The report further states that the Khalistani (Sikh separatist) movement gained momentum following the 1984 Sikh occupation of the Golden Temple in Amritsar, India, and the subsequent Indian army attack ("Operation Blue Star") on the temple, in which hundreds of Sikhs, including charismatic Sikh leader Jarnail Singh Bhindranwale, were killed. The AISSF is one of many Sikh groups that were transformed during this very volatile period in Indian history (DIS Sep 2000, TSS 13 Sep 2003, UK-COIS Apr 2006). The April 2006 report on India by the UK's Country of Origin Information Service cites April 1996 information from British officials working in India in stating that "[w]hile the AISSF sought a separate Sikh homeland, it did not fight for it until militancy erupted [in Punjab]…in 1981. From then onwards, a number of AISSF members joined the ranks of the militants" (UK-COIS Apr 2006). Likewise, a September 2003 SIKH SENTINEL article states: "…[T]he All India Sikh Student Federation (AISSF)…was a non-violent group until it split into multiple wings, some of which advocated violence" (TSS 17 Sep 2003). Dr. Chima found this depiction to be "generally correct in the sense that the AISSF never officially endorsed violence before 1984. Instead, it was a mass-based organization with probably over 100,000 members, mostly students, throughout Punjab. But, it was rumored to have a miniscule, but effective, 'armed wing' called the 'Deshmesh Regiment' [comprised] of only a few members to engage in selective political assassinations on behalf of the upper-most leadership of the AISSF" (Chima 28 Sep 2006).

According to a 1992 Department of State background information report on terrorist groups (found on the www.fas.org site), "Sikh terrorism is sponsored by a number of Indian and expatriate Sikh groups who want to carve out an independent Sikh state called Khalistan (`Land of the Pure'') from Indian territory. Sikh violence outside India, which surged following the Indian Army's 1984 assault on the Golden Temple, Sikhism's holiest shrine, has decreased but remains high. Groups that have carried out acts of terrorism include the Dashmesh or 10th Regiment (active in India, Germany, and Canada); Dal Khalsa; Babbar Khalsa (India, Western Europe, Canada); and the All-India Sikh Students Federation (militant wing of the main Sikh party, the Akali Dal, now splintered)."

The Department of State (DoS) report goes on to state: "Regular and bloody attacks mounted frequently in India against Hindus and against Indian officials and facilities, particularly in Punjab; they include assassinations, bombings, and kidnappings. Sikh extremists probably bombed the Air India jet downed over the Irish Sea in June

SARABIJIT KAUR THIND
Page 4

1985, killing 329 passengers and crew. On the same day, a bomb planted by Sikhs on an Air India flight from Vancouver exploded in Tokyo's Narita airport, killing two Japanese baggage handlers. In 1991, Sikh terrorists attempted to assassinate the Indian Ambassador in Romania--once India's senior police officer in Punjab (1986-89)--and kidnapped and held the Romanian Charge in New Delhi for seven weeks. Sikh attacks within India, ranging from kidnappings and bombings to assassinations, continue at a high level. Indian security forces captured or killed many Sikh leaders in 1992, however, and total civilian deaths in Punjab have dropped as compared to 1991, when more than 3,300 civilians died. There was a marked drop in the number of killings during the closing months of 1992."

Quoting the US CIS report again, "The International Sikh Youth Federation (ISYF), which was founded as the international branch of the All India Sikh Students Federation (AISSF) (PSEPC 17 Nov 2004), is aggressive and effective in its international fund raising activities (Global Security 27 Apr 2005, Satp.org undated). On June 27, 2002, the US Treasury Department added the ISYF to its listing of Specially Designated Nationals and Blocked Persons (OFAC 27 Jun 2002), and on April 29, 2004, Secretary of State Colin Powell, in consultation with the Attorney General, placed the ISYF on the Terrorist Exclusion List (USDOS 29 Dec 2004)."

A Canadian government source at http://www.ps-sp.gc.ca/prg/ns/le/cle-en.asp states: "The International Sikh Youth Federation (ISYF) was founded in 1984 in the United Kingdom as an international branch of the All India Sikh Students' Federation (AISSF) with centers in several countries, including Canada. The ISYF is a Sikh organization whose aim is to promote Sikh philosophy and the establishment of an independent Sikh nation called Khalistan. In the pursuit of their goal, the ISYF does not hesitate to resort to violence. Since 1984, its members have been engaged in terrorist attacks, assassinations and bombings mostly against Indian political figures, but also against moderate members of the Sikh community opposed to their extremist ways. The ISYF collaborates and/or associates with a number of Sikh terrorist organizations, notably Babbar Khalsa (BK), the Khalistan Liberation Force (KLF) and the Khalistan Commando Force (KCF)."

Due to its subgroups, AISSF and ISYF, the Akali Dal meets the current definition of an undesignated terrorist organization at INA section 212(a)(3)(B)(vi)(III). The violent activities of the AISSF and the ISYF match those described in section 212(a)(3)(B)(iii) and 212(a)(3)(B)(iv). Thus, the beneficiary is inadmissible under INA Section 212(a)(3)(B)(i)(VI) based on the beneficiary and the petitioner's membership in the Akali Dal.

Section 212(a)(3)(B)(iii) of the Immigration and Naturalization Act (ACT) states in pertinent part:

> Terrorist activity defined.-As used in this Act, the term "terrorist activity" means any activity which is unlawful under the laws of the place where it is committed (or which, if it had been committed in the United States, would be unlawful under the laws of the United States or any State) and which involves any of the following:
>
>> (I) The highjacking or sabotage of any conveyance (including an aircraft, vessel, or vehicle).
>>
>> (II) The seizing or detaining, and threatening to kill, injure, or continue to detain, another individual in order to compel a third person (including a governmental organization) to do or abstain from doing any act as an explicit or implicit condition for the release of the individual seized or detained.
>>
>> (III) A violent attack upon an internationally protected person (as defined in section 1116(b)(4) of title 18, United States Code) or upon the liberty of such a person.

Section 237(a)(4)(B) of the ACT states: "TERRORIST ACTIVITIES- Any alien who is described in subparagraph (B) or (F) of section 212(a)(3) is deportable."

SARABIJIT KAUR THIND
Page 5

H.R.2764. SEC. 691. (a) AMENDMENT TO AUTHORITY TO DETERMINE THE BAR TO ADMISSION INAPPLICABLE- Section 212(d)(3)(B)(i) of the Immigration and Nationality Act (8 U.S.C. 1182(d)(3)(B)(i)) is amended to read as follows:

(c) TECHNICAL CORRECTION- Section 212(a) (3) (B) (ii) of the Immigration and Nationality Act (8 U.S.C. 1182(a) (3) (B) (ii)) is amended by striking 'Subclause (VII)' and inserting 'Subclause (IX)'

Title 8, Code of Federal Regulations, part 208.21(f) states in pertinent part:

To establish the claim of relationship of spouse or child as defined in section 101(b) (1) of the Act, evidence must be submitted with the request ... the burden of proof is on the principal alien to establish by a preponderance of evidence that any person on whose behalf he or she is making a request is an eligible spouse or child.

The petitioner stated in the Notice of Intent to Deny rebuttal declaration that her membership ended when she came to the United States in 1999. However, the petitioner had previously stated on both her Form I-589, Application for Asylum and for Withholding of Removal, filed on August 10, 2000 and on her Form I-485, Application to Register Permanent Resident or Adjust Status, filed on January 30, 2003, that she is a member and supporter of the Akali Dal (Mann). Thus, the petitioner's current declaration is in direct conflict with the information she previously provided regarding her membership in Akali Dal. She signed both her Form I-589 and her Form I-485 under penalty of perjury indicating that the information contained on these forms was true and correct. She signed these forms subsequent to her entry into the United States in 1999. On both forms she indicated that her membership was current, implying that she was still a member and supporter of Akali Dal in 2000 and 2003.

The above stated inconsistency in the record has not been sufficiently resolved by the petitioner. Furthermore, the petitioner's membership in an organization that appears to meet the definition of a terrorist organization makes the beneficiary ineligible for derivative asylum under Section 212(a)(3)(B)(i)(VII).

In Matter of Ho, 19 I&N Dec. 582 (BIA 1988), it was held that where inconsistencies appear in the record, it is incumbent on the petitioner to resolve or explain those discrepancies by independent, objective evidence.

In visa petition proceedings, the petitioner bears the burden of establishing eligibility for the benefits sought. Matter of Brantigan, 11 I&N Dec. 493 (BIA 1966). The petitioner has clearly not met such burden.

In view of the above, this petition must be and hereby is denied.

This denial may not be appealed. However, if you believe that you can overcome the grounds for denial, you may submit a new petition with the appropriate documentation to this office.

Sincerely,

F. Gerard Heinauer
Director

NSC/KMC/404